RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0223p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW); JAMES WARD; MARSHALL HUNT; RICHARD GORDON,

　　　　　　　　　*Plaintiffs-Appellees*,

　　*v.*

KELSEY-HAYES COMPANY; TRW AUTOMOTIVE HOLDINGS CORPORATION; NORTHROP GRUMMAN SYSTEMS CORPORATION,

　　　　　　　　　*Defendants-Appellants*.

No. 15-2285

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-14434—Julian A. Cook, District Judge.

Decided and Filed: September 22, 2017

Before: GILMAN, GIBBONS, and STRANCH, Circuit Judges.

　　GIBBONS, J. (pp. 2–3), delivered a concurrence to the denial of rehearing en banc. SUTTON, J. (pg. 4), delivered a concurrence to the denial of rehearing en banc. GRIFFIN, J. (pp. 5–9), delivered a dissent to the denial of rehearing en banc, in which GILMAN, J., joined.

_____

## ORDER

_____

　　The court received a petition for rehearing en banc. The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision on the cases. The petition then was circulated to the full court.[1] Less than a majority of the judges voted in favor of rehearing en banc.

　　Therefore, the petition is denied. Judge Gilman would grant rehearing for the reasons stated in his dissent, and also joins Judge Griffin's dissent.

---

[1]Judge White recused herself from participation in this ruling.

1

_____

**CONCURRENCE**

_____

GIBBONS, Circuit Judge, concurring.  This case is one of three cases with related issues in which opinions were filed, by cooperation of all three panels, on the same date.  No poll was requested in the other cases.  At the core of each case is interpretation of the particular collective bargaining agreement (CBA) at issue in that case.  Resolution in each case depended on the examination of the agreement's terms.  In my view, the factual differences between the cases determined the outcomes.  Because the facts dictated the results, the cases can be reconciled.

The global issue of retiree health care guarantees is not presented here.  The issue in this case is whether the CBA at issue provided comprehensive lifetime healthcare benefits for covered retirees and their surviving spouses.  The answer to that question depended on a close examination of the provisions of the CBA, the history of the parties, and evidence that supported a finding that the UAW and Kelsey-Hayes "understood the language in the 1998 CBA to create lifetime healthcare benefits for Detroit plant retirees."  *Kelsey-Hayes*, 854 F.3d at 869.  The panel majority noted, "[s]pecifically, Kelsey-Hayes has both acted in a manner that supports finding vested healthcare rights and provided retiree plaintiffs with additional written documentation that their healthcare was for life."  *Id.*  This sort of factual focus hardly presents a question of exceptional importance.

The interpretation of *Gallo v. Moen, Inc.*, 813 F.3d  265 (6th Cir. 2016), is the issue separating the majority and dissents in *Kelsey-Hayes* and *Reese v. CNH Industrial N.V.*, 854 F.3d 877 (6th Cir. 2017).  From my perspective, *Gallo* represents a clear application of the Supreme Court's message in *M & G Polymers USA, LLC  v. Tackett*, 135 S. Ct. 926 (2015), followed up in *Tackett v. M & G Polymers USA, LLC*, 811 F.3d 204 (6th Cir. 2016) (*Tackett III),* to apply ordinary contract principles.  The *Gallo* panel looked to the language of that particular CBA and also to the absence of certain language, following the Supreme Court's caution in *Tackett:* "when a contract is silent as to the duration of retirement benefits, a court may not infer that the parties intended those benefits to vest for life."  *Tackett*, 135 S. Ct. at 937; *Gallo*, 813 F.3d at 268.  In *Gallo*, the pertinent facts were the presence of a general-duration clause, coupled with the

absence of any provision extending the contract beyond its end date. If *Gallo* is regarded as simply another case whose resolution depended on examination of a factual record and application of old and tested contract construction principles, there is no conflict at all among our cases. The only tension arises from viewing *Gallo* as more than a factual precedent and making it a legal precedent for dissimilar cases. My position, set out in section III.B of the *Kelsey-Hayes* majority, is that *Gallo* by its terms does not have the meaning suggested by the dissents in *Kelsey-Hayes* and *Reese* but is merely a case where the contract was unambiguous and did not vest benefits for life. If one takes *Gallo* beyond that and treats it as articulating a more generally applicable legal principle, it likely conflicts with *Tackett III*, which is the earlier case and controls.

Even though there was a general duration clause in the 1998 CBA between the parties in *Kelsey-Hayes*, other language created ambiguity about what the parties intended. *Cole v. Meritor, Inc.*, 855 F.3d 695, 699 (6th Cir. 2017) by contrast, has facts the opinion called "indistinguishable" from those in *Gallo*, making *Gallo* an appropriate factual precedent for that case. And Judge Gilman's dissent in *Kelsey-Hayes* is based on an evaluation of that case as also being factually indistinguishable from *Gallo*, a point with which the majority disagreed.

I share Judge Sutton's concern that rehearing this case en banc would not yield any productive results. A difference of opinion about whether one case is factually similar to another is not good fodder for en banc review. The differing results in our cases are a natural byproduct of a necessarily factual inquiry. There is no issue of exceptional importance and no other basis for en banc review. For these reasons, I concur in the denial of en banc review.

———————————

**CONCURRENCE**

———————————

SUTTON, Circuit Judge, concurring. By nearly every measure, this case deserves en banc review. Distinct perspectives on the lifetime vesting of healthcare benefits in time-limited collective bargaining agreements led us to release three opinions on the same day that face in different directions. *See Cole v. Meritor, Inc.*, 855 F.3d 695 (6th Cir. 2017); *Reese v. CNH Indus. N.V.*, 854 F.3d 877 (6th Cir. 2017); *UAW v. Kelsey Hayes*, 854 F.3d 862 (6th Cir. 2017). As I see it, some of those decisions are inconsistent with *M&G Polymers USA, LLC v. Tackett*, 135 S.Ct. 926 (2015), and some of them contrast with the approach our sister circuits have taken on the same issue, *see Noe v. PolyOne Corp*, 520 F.3d 548 (6th Cir. 2008) (Sutton, J., dissenting) (collecting cases).

An intra-circuit split accompanied by an inter-circuit divide followed by lack of conformity to a Supreme Court decision normally warrants en banc review. But in this instance there is good reason to fear that a majority of the en banc court would fail to agree on a majority view. One of the three cases mentioned above, *Reese*, illustrates the problem. In that case, three judges reached three different conclusions on the same issue. One view was that the collective bargaining agreement was ambiguous and extrinsic evidence resolved that ambiguity as a matter of law in favor of unalterable lifetime benefits for the retirees. *Reese*, 854 F.3d at 887 (Donald, J., concurring). A second view was that a lifetime promise existed but was subject to reasonable alteration by the employer. *Id.* at 878–87 (Gibbons, J.). A third view was that the promise was limited by the six-year term of the collective bargaining agreement. *Id.* at 887–93 (Sutton, J., dissenting). With 16 judges on the en banc court, there is a real possibility that we would not have nine votes for any one of these three approaches. That may explain why the deadlines for requesting en banc review in the other two cases released on April 20 all passed without a request for a poll. Something ventured in this instance likely would lead to nothing gained.

———————————

**DISSENT**

———————————

GRIFFIN, Circuit Judge, dissenting.

I respectfully dissent from the denial of the petition for rehearing en banc.

Two years ago, the Supreme Court emphatically rejected our *Yard-Man*[1] approach to resolving whether collective bargaining agreements vest retirees with a right in a lifetime of healthcare benefits. *See M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015). Instead of "placing a thumb on the scale in favor of vested retiree benefits" under *Yard-Man*, the Supreme Court instructed that courts are to interpret CBAs "according to ordinary principles of contract law." *See id.* at 930, 933, 935.

Our post-*Tackett* case law is a mess, largely due to different panels' interpretations of two such "ordinary principles" identified in *Tackett*: "courts should not construe ambiguous writings to create lifetime promises" and "'contractual obligations will cease, in the ordinary course, upon termination of the collective bargaining agreement.' . . . [W]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id.* at 936–37 (citation omitted).

Five different panels (comprised of eleven total judges on our court in various combinations) have considered *Tackett* in published matters. First, upon *Tackett*'s remand from the Supreme Court, we expounded upon what constitutes "ordinary principles," and even incorporated additional principles suggested by Justice Ginsburg in her *Tackett* concurrence. *Tackett v. M & G Polymers USA, Inc.*, 811 F.3d 204, 208–09 (6th Cir. 2016) ("*Tackett III*") (citing *Tackett*, 135 S. Ct. at 937–38 (Ginsburg, J., concurring)). Leveraging these (especially latter) elucidations, we opined that courts "cannot presume that the *absence* of such specific [durational] language [referring to retiree benefits themselves], by itself, evidences an intent *not* to vest benefits or that a general durational clause says *everything* about the intent to vest." *Id.* at

---

[1]*UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983).

209. But despite these overarching pronouncements, we did not substantively address the CBA at issue; we remanded the matter to the district court for consideration in the first instance. *Id.* at 206.

We have applied these "ordinary principles" from *Tackett* and *Tackett III* in four published cases. *See Reese v. CNH Indus. N.V.*, 854 F.3d 877 (6th Cir. 2017); *UAW v. Kelsey-Hayes*, 854 F.3d 862 (6th Cir. 2017); *Cole v. Meritor, Inc.*, 855 F.3d 695 (6th Cir. 2017); and *Gallo v. Moen, Inc.*, 813 F.3d 265 (6th Cir. 2016). In my view, these decisions are in irreconcilable conflict regarding how courts are to view durational clauses. Indeed, each produced separate and spirited writings on that issue—a dissent in *Reese* by Judge Sutton, a dissent in *Kelsey-Hayes* by Judge Gilman, a "reluctant" concurrence in *Cole* by Judge White, and a dissent in *Gallo* by Judge Stranch.

We issued *Gallo* a few weeks after *Tackett III*. "First and foremost," we noted, nothing in the CBA there committed the employer to provide healthcare benefits for life. 813 F.3d at 269. Relatedly, and in no uncertain terms, we highlighted the juxtaposition of this lack of a commitment with the CBA's express durational limitation: a CBA's general durational clause "supplie[s] a concrete date of expiration," and "[w]hen a specific provision of the CBA does not include an end date, we refer to the general durational clause to determine that provision's termination." *Id.* That is to say, commitments to provide retirees healthcare in the form of "will be provided," "will be covered," and "continued" healthcare—without specific durational language—"*guarantee* benefits until the agreement expires, nothing more." *Id.*; *see also id.* at 271–72. For these and other reasons, we held—over Judge Stranch's dissent—the employees' benefits were not vested. 18 U.S.C. § 2255.

Enter our trio of cases issued on April 20 of this year: *Cole*, *Kelsey-Hayes*, and *Reese*. Issued first, *Cole* found *Gallo* to be "legally indistinguishable"—the CBA "provided that retiree healthcare benefits 'shall be continued,'" it did not "provide[] a specific expiration date for those benefits," and "explicitly tied healthcare benefits to the continuing existence of the CBA in question." 855 F.3d at 700. Given this, and the CBA's general durational clause, we found the CBA to be "unambiguous in not vesting retiree healthcare benefits for life." *Id.* Judge White "reluctantly concur[red]," writing that she disagreed with *Gallo* but was bound by its holding.

*Id.* at 702 (White, J., concurring). We denied the appellees' petition for rehearing en banc on June 23, 2017.

*Kelsey-Hayes* and *Reese* fell the other way. In the latter, and over Judge Sutton's dissent, we distinguished *Gallo* "because the parties in this case carved out certain benefits, such as life insurance and healthcare insurance, and stated that those coverages ceased at a time different than other provisions of the CBA. True, this provision says only that healthcare coverage continues past the date of retirement and is silent on whether the benefits continue past the termination date of the agreement. But, when read in conjunction with the whole instrument, as *Tackett III* commands, this silence, rather than resolving ambiguity, furthers it. We cannot, and should not, presume that the general-durational clause here says everything about the parties' intentions." *Reese*, 854 F.3d at 882. We then went on to find ambiguity on the basis of the CBA's tying of benefits to achievement of pensioner status, *id.* at 882–83, and concluded *Tackett III* mandated that we not "rely[] exclusively on the general-durational clause to resolve this matter." *Id.* at 883. Importantly, we highlighted significant tension between *Tackett III* and *Gallo*:

> To the extent that *Tackett III* and *Gallo* are in conflict—a dispute about which reasonable minds may differ—*Tackett III*, being first in time, must govern. To so hold is not an endorsement of *Tackett III*'s reasoning nor is it an indictment of *Gallo*'s; rather, it simply demonstrates adherence to this court's precedent.

*Id.* at 833 n.2. We denied both parties' petitions for rehearing en banc on August 28, 2017.

In the former, and over Judge Gilman's dissent, we distinguished *Gallo* because, unlike there, the CBA at issue in *Kelsey-Hayes* "barred unilateral modification." 854 F.3d at 868, 871–72. This distinguishing factor, along with the CBA's "use of three different types of durational language for specific provisions within the agreement"—but none with respect to healthcare benefits—led us to conclude the CBA was "ambiguous as to the duration of healthcare benefits" and therefore permitted the use of extrinsic evidence to find an intent to vest benefits. *Id.* at 872; *see also id.* at 868–69.

In my view, we should grant rehearing en banc in *Kelsey-Hayes* in order to secure the uniformity of our decisions post-*Tackett*. Fed. R. App. P. 35(a)(1). As set forth above and in

Judge Gilman's panel dissent, our published decisions conflict regarding the weight we give the plain language of a collective bargaining agreement's durational limitations. *Kelsey-Hayes*, 854 F.3d at 873–77 (Gilman, J., dissenting). Simply put, *Gallo*, *Cole, Reese*, and *Kelsey-Hayes* cannot all be correct. We should also take this opportunity to decide the precedential value (if any) of *Tackett III*—there is reasonable debate as to whether its entire discussion is dicta, *id.* at 873–74, whether it conflicts with *Gallo*, *Reese*, 854 F.3d at 883 n.2, and whether it is inconsistent with *Tackett* in and of itself as Justice Ginsburg's concurring ruminations adopted by the *Tackett III* court were not expressly adopted by the *Tackett* majority.

Additionally, we should grant rehearing en banc because the issue of retiree healthcare guarantees presents a question of exceptional importance. Fed. R. App. P. 35(a)(2). It is no secret that a combination of several factors—including the number of unionized workforces (and retirees) within our Circuit, the various economic downturns in several of the manufacturing sectors that led to corporate restructuring and the cutting of benefits, and our pro-retiree *Yard-Man* inference—has led to the maintenance of numerous retiree healthcare cases within our jurisdiction. There are at least four active cases currently on appeal to our court, *see IUE-CWA v. GE*, No. 17-3885; *Zino v. Whirlpool*, No. 17-3851/3860; *Fletcher v. Honeywell*, No. 17-3277; and *Watkins v. Honeywell Int'l, Inc.*, No. 17-3032, not to mention countless others percolating in various district courts. District judges, litigants, and subsequent panels need authoritative and non-conflicting guidance, and results should not depend upon the composition of the three-judge panel.

Finally, that we may not secure a majority rationale for how to approach retiree health benefits post-*Tackett* should have no bearing on whether to consider this matter en banc. Right now, our case law is one of contradiction and confusion in an area of the law that demands consistency and clarity. Were we to rehear *Kelsey-Hayes* en banc, the worst we could do is to maintain this disparate status quo. We should at least try, especially because this is a problem unique to us. No other circuit utilized the *Yard-Man* presumption, and as a result, no other circuit has struggled with applying *Tackett*. Thus, I fear our passing on this petition for rehearing en banc will be the last word in this matter for a long time, and our decisions will remain in conflict.

For these reasons, I would grant rehearing en banc and therefore respectfully dissent.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk